## UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| JULIE L. BENSON,<br><br>                     Petitioner,<br><br>v.<br><br>CAROLYN W. COLVIN,<br>Acting Commissioner of Social Security<br>Administration,<br><br>               Respondent. | Case No. 4:15-cv-00174-BLW-CWD<br><br>**REPORT AND**<br>**RECOMMENDATION** |

## INTRODUCTION

Before the Court is Julie Benson's Petition for Review, filed May 21, 2015,

seeking judicial review of a final decision of the Commissioner of Social Security. (Dkt.

1.) The Court has reviewed the Petition for Review and the Answer, the parties'

memoranda, and the administrative record (AR). For the reasons that follow, the Court

will recommend that the decision of the Commissioner be remanded to the Commissioner

with further instructions. The basis for the Court's recommendation is that the ALJ's

decision is not supported by substantial evidence based upon the record as a whole, and

the ALJ disregarded certain evidence in favor of selected aspects of the record to support

his conclusion Petitioner is not disabled. Accordingly, the Court finds the ALJ committed

error.

**REPORT AND RECOMMENDATION - 1**

## PROCEDURAL AND FACTUAL HISTORY

Petitioner filed an application for Disability Insurance Benefits and Supplemental Security Income on July 19, 2012, claiming disability due to a cognitive disorder, a learning disability, depression, headaches, and bilateral optic nerve hypoplasia with congenital nystagmus. This application was denied initially and on reconsideration, and a hearing was held on July 16, 2013, before Administrative Law Judge (ALJ) John Arkoosh. After hearing testimony from Petitioner, her mother and father, and a vocational expert, ALJ Arkoosh issued a decision finding Petitioner not disabled on August 8, 2013. Petitioner timely requested review by the Appeals Council, which denied her request for review on March 26, 2015.

Petitioner appealed this final decision to the Court. The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g).

At the time of the hearing, Petitioner was thirty-eight years of age. Petitioner completed high school and one semester of college. Petitioner's prior work experience is limited to work as a medical transcriptionist for her father, a physician.

## SEQUENTIAL PROCESS

The Commissioner follows a five-step sequential evaluation for determining whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520, 416.920. At step one, it must be determined whether the claimant is engaged in substantial gainful activity. The ALJ found Petitioner had not engaged in substantial gainful activity since her alleged onset date, September 30, 2009. At step two, it must be determined whether the claimant

**MEMORANDUM DECISION AND ORDER - 2**

suffers from a severe impairment. The ALJ found Petitioner's cognitive disorder, nonverbal learning disability, depressive disorder, bilateral optic nerve hypoplasia with congenital nystagmus, and headaches severe within the meaning of the Regulations.

Step three asks whether a claimant's impairments meet or equal a listed impairment. The ALJ found that Petitioner's impairments did not meet or equal the criteria for the listed impairments, specifically considering the criteria of Listings 12.02 (Organic Mental Disorders), 12.04 (Affective disorders), and 12.05 (Intellectual disability), as well as 2.02 (Loss of Central visual acuity), 2.03 (Contraction of the visual fields in the better eye), and 2.04 (Loss of visual efficiency), and 11.00 (Neurological). If a claimant's impairments do not meet or equal a listing, the Commissioner must assess the claimant's residual functional capacity (RFC) and determine, at step four, whether the claimant has demonstrated an inability to perform past relevant work.

The ALJ found Petitioner was not able to perform her past relevant work as a medical transcriptionist, because her father provided significant accommodations to enable her to complete the work. If a claimant demonstrates an inability to perform past relevant work, the burden shifts to the Commissioner to demonstrate, at step five, that the claimant retains the capacity to make an adjustment to other work that exists in significant levels in the national economy, after considering the claimant's residual functional capacity, age, education and work experience.

The ALJ determined Petitioner retained the RFC to perform light work, with accommodations made for her vision, and that such work would be limited to simple,

**REPORT AND RECOMMENDATION - 3**

routine and repetitive tasks in a work environment with only occasional production rate or pace work; simple work-related decisions with few, if any, changes in the workplace; occasional interaction with the public, co-workers, and supervisors; and occasional supervision, defined as requiring the supervisor's critical checking of the person's work. With such an RFC, the ALJ found Petitioner could perform the requirements of representative occupations such as photocopy machine operator, mail clerk, and laundry worker.

## STANDARD OF REVIEW

Petitioner bears the burden of showing that disability benefits are proper because of the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also* 42 U.S.C. § 1382c(a)(3)(A); *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971). An individual will be determined to be disabled only if her physical or mental impairments are of such severity that she not only cannot do her previous work but is unable, considering her age, education, and work experience, to engage in any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. § 423(d)(2)(A).

On review, the Court is instructed to uphold the decision of the Commissioner if the decision is supported by substantial evidence and is not the product of legal error. 42 U.S.C. § 405(g); *Universal Camera Corp. v. Nat'l Labor Relations Bd.*, 340 U.S. 474

**MEMORANDUM DECISION AND ORDER - 4**

(1951); *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) (as amended); *DeLorme v. Sullivan*, 924 F.2d 841, 846 (9th Cir. 1991). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is more than a scintilla but less than a preponderance, *Jamerson v. Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997), and "does not mean a large or considerable amount of evidence." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

The Court cannot disturb the Commissioner's findings if they are supported by substantial evidence, even though other evidence may exist that supports the petitioner's claims. 42 U.S.C. § 405(g); *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995). Thus, findings of the Commissioner as to any fact, if supported by substantial evidence, will be conclusive. *Flaten*, 44 F.3d at 1457. It is well-settled that, if there is substantial evidence to support the decision of the Commissioner, the decision must be upheld even when the evidence can reasonably support either affirming or reversing the Commissioner's decision, because the Court "may not substitute [its] judgment for that of the Commissioner." *Verduzco v. Apfel*, 188 F.3d 1087, 1089 (9th Cir. 1999).

When reviewing a case under the substantial evidence standard, the Court may question an ALJ's credibility assessment of a witness's testimony; however, an ALJ's credibility assessment is entitled to great weight, and the ALJ may disregard a claimant's self-serving statements. *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990). Where

**REPORT AND RECOMMENDATION - 5**

the ALJ makes a careful consideration of subjective complaints but provides adequate reasons for rejecting them, the ALJ's well-settled role as the judge of credibility will be upheld as based on substantial evidence. *Matthews v. Shalala*, 10 F.3d 678, 679-80 (9th Cir. 1993).

## DISCUSSION

Petitioner believes the ALJ erred at steps three and four. Petitioner first contends the ALJ erred in finding that Petitioner does not have an impairment or combination of impairments which meet or are medically equivalent to a listed impairment. Second, Petitioner asserts the ALJ erred in assessing Petitioner's credibility. Third, Petitioner contends the ALJ improperly rejected the testimony of Petitioner's parents. And finally, Petitioner contends the ALJ erred by giving greater weight to the opinion of the agency psychological consultant than to the opinions of Petitioner's treating and examining physicians, Drs. Corgiat and  Ross. Consequently, Petitioner argues the ALJ's finding that Petitioner retained the RFC to perform light work was not supported by substantial evidence in the record. Each of Petitioner's assignments of error will be discussed in turn.

## 1.    Meet or Equal a Listing

The ALJ found that Petitioner's impairments do not meet or equal any listing. Specifically, the ALJ found that Petitioner's impairments do not meet or equal the criteria of Listings 12.02 (Organic Mental Disorders), 12.04 (Affective disorders), and 12.05 (Intellectual disability), as well as 2.02 (Loss of Central visual acuity), 2.03 (Contraction of the visual fields in the better eye), and 2.04 (Loss of visual efficiency), and 11.00

**MEMORANDUM DECISION AND ORDER - 6**

(Neurological).

If the claimant satisfies the criteria under a listing and meets the twelve month duration requirement, the Commissioner must find the claimant disabled without considering age, education and work experience. 20 C.F.R. § 404.1520(a)(4)(iii), (d). A claimant bears the burden of producing medical evidence that establishes all of the requisite medical findings that his impairments meet or equal any particular listing. *Bowen v. Yuckert,* 482 U.S 137, 146, n. 5 (1987). Further, if the claimant is alleging equivalency to a listing, the claimant must proffer a theory, plausible or other, as to how her combined impairments equal a listing. *See Lewis v. Apfel,* 236 F.3d 503, 514 (9th Cir. 2001).

An impairment, or combination of impairments, is medically equivalent to a listing "if it is at least equal in severity and duration to the criteria of any listed impairment," considering "all evidence in [the] case record about [the] impairment(s) and its effects on [the claimant] that is relevant…." 20 C.F.R. § 404.1526(a), (c). Equivalence depends on medical evidence only; age, education, and work experience are irrelevant. *Id.* at § 404.1526(c). Finally and critically, "the claimant's illnesses 'must be considered in combination and must not be fragmentized in evaluating their effects.'" *Lester v. Chater*, 81 F.3d 821, 829 (9th Cir. 1995) (quoting *Beecher v. Heckler*, 756 F.2d 693, 694-95 (9th Cir. 1985)).

Here, Petitioner argues only that the ALJ failed to give proper consideration to the effect of the combination of impairments. Other than a conclusory argument that the ALJ

**REPORT AND RECOMMENDATION - 7**

did not consider the totality of Petitioner's impairments, Petitioner has not articulated a theory as to how her combined impairments meet any listing. Nor has Petitioner identified a listing that her impairments satisfied. Because Petitioner has not advanced a plausible theory as to how her impairments meet the criteria for a listing, the Court recommends the ALJ's findings in this regard be affirmed.

## 2.    Credibility

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). The ALJ's findings must be supported by specific, cogent reasons. *Reddick*, 157 F.3d at 722. If a claimant produces objective medical evidence of an underlying impairment, an ALJ may not reject a claimant's subjective complaints of pain based solely on lack of medical evidence. *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005). *See also Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997) (holding that an ALJ may not discredit a claimant's subjective testimony on the basis that there is no objective medical evidence that supports the testimony). Unless there is affirmative evidence showing that the claimant is malingering, the ALJ must provide clear and convincing reasons for rejecting the claimant's subjective complaints. *Burch*, 400 F.3d at 680. General findings are insufficient; the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints. *Reddick*, 157 F.3d at 722.

The reasons an ALJ gives for rejecting a claimant's testimony must be supported

by substantial evidence in the record. *Regennitter v. Comm'r of Soc. Sec. Admin.*, 166 F.3d 1294, 1296 (9th Cir. 1999). If there is substantial evidence in the record to support the ALJ's credibility finding, the Court will not engage in second-guessing. *Thomas v. Barnhart*, 278 F.3d 957, 959 (9th Cir. 2002). When the evidence can support either outcome, the Court may not substitute its judgment for that of the ALJ. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

In evaluating credibility, the ALJ may engage in ordinary techniques of credibility evaluation, including considering claimant's reputation for truthfulness and inconsistencies in claimant's testimony, or between claimant's testimony and conduct, claimant's daily activities, claimant's work record, and testimony from physicians and third parties concerning the nature, severity and effect of the symptoms of which claimant complains. *Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002). Also, the ALJ may consider the location, duration and frequency of symptoms; factors that precipitate and aggravate those symptoms; the amount and side effects of medications; and treatment measures taken by the claimant to alleviate those symptoms. *See* Soc. Sec. Ruling 96-7p.

Here, the ALJ found Petitioner's testimony with regard to the severity of her nonverbal learning disability and her corresponding inability to perform any work was not entirely credible. The ALJ explained that, after consideration of the evidence, he found Petitioner's impairments could reasonably be expected to cause the alleged symptoms, but her "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision."

**REPORT AND RECOMMENDATION - 9**

(AR 22.)

In support of his credibility finding, the ALJ first noted Petitioner's daily activities, which led him to conclude that Petitioner's learning disability is not as disabling as she claims. Petitioner reported she spends a considerable amount of time on her computer every day; performs household chores, such as watering the household plants, washing dishes and laundry, and dusting and vacuuming; participates in a Masonic family organization that meets twice a month.  She is able to feed, bathe, and clothe herself. The ALJ concluded that, while Petitioner's daily activities are limited, her reported activities did not support a finding that Petitioner is precluded from all types of work activity.

The ALJ, however, selectively considered the evidence. First, the ALJ rejected Petitioner's account that she is unable to work because her mannerisms are different than "normal" and therefore she cannot interact with people on a daily basis. The ALJ rejected this portion of Petitioner's testimony on the basis of her participation in a Masonic family organization, Eastern Star, which met twice a month. (AR 18.) However, the record reveals that, during the meetings of Eastern Star, Petitioner would "sit on the chairs on the side of the room and mostly stay quiet." (AR 51.) The ALJ overlooked also that Petitioner required "supervision" and support, and had assigned tasks, in order to participate in the Eastern Star meetings. (AR 213, 248, 278.) Further, Petitioner is not able to drive, and requires someone else to provide her transportation to the meetings. (AR 53.)

**MEMORANDUM DECISION AND ORDER - 10**

The ALJ next considered employment that would not involve working with others, to which Petitioner responded she would have difficulty because of her visual field discrepancies. Petitioner suffers from a visual impairment that, even with corrective lenses, leaves her left eye at 20/200 and her right eye nearsighted, resulting in difficulty with depth perception and difficulty seeing objects below the bridge of her nose. (AR 45.). Petitioner testified she had a job building computer boards, placing small screws into holes to fix a motherboard to a computer case. If the screwdriver lost hold of the screw, it would take Petitioner a "long time to realize where the screw had fallen if [she] ever realized it." (AR 47.) Petitioner was unable to retain that job for longer than one month. (AR 36.) Nonetheless, the ALJ simply noted in his decision that the RFC determination, which accounted for Petitioner's visual impairments, was sufficient.

However, the ALJ failed to discuss the evidence demonstrating how Petitioner's vision impairment and her learning disability, taken together, often would result in incomplete efforts. For example, Petitioner testified that, while she can dust, she will miss spots because she cannot see, and will leave areas dusty until someone points them out  (AR 50.) Petitioner's mother testified that the tasks she gave Petitioner were tasks that did not require a specific completion time, and that often she would finish the task with Petitioner. (AR 64.) And finally, Petitioner's mother testified that, even a job mopping floors, for example, would result in incomplete efforts because, although Petitioner would try, in her experience Petitioner did not realize areas she missed cleaning or simply did not know she was doing something incorrectly. (AR 67.) The

**REPORT AND RECOMMENDATION - 11**

examination by Dr. Ross corroborated the testimony of both Petitioner and her mother, finding Petitioner had "limited insight regarding [the] impact of her deficits on her day-to-day activities," and objective tests revealed a pattern of "cognitive rigidity [which] further negatively impacts her functioning in many problem solving situations." (AR 325, 326.)

Finally, the ALJ discussed Petitioner's daily activities, inferring that Petitioner's activities constitute substantial evidence undermining Petitioner's credibility. The ALJ noted Petitioner watches television, reads on a computer, swims when she has access to a pool, plays computer games, waters the plants, and takes care of her personal needs, albeit in a somewhat unsatisfactory manner. But, the ALJ failed to appreciate Petitioner's relative social isolation. In other words, because of her non-verbal learning disability, Petitioner's daily activities involve no social interaction other than with her immediate family, and involve nothing other than meeting her basic needs. The record revealed Petitioner does not venture out of the house without assistance. As examples, Petitioner cannot drive a car; she must be given explicit instructions to walk places; she is unable to take the bus without being shown how to get somewhere; and she cannot shop without assistance. (AR 50; 53; 57; 58; 59; 66.)

Even with regard to Petitioner's basic needs, the ALJ was selective. For instance, with regard to watering the plants, the ALJ ignored Petitioner's mother's testimony that, while her daughter does water the plants, she "blasts the flowers out of the pots" with the hose, and despite repeated instructions, continues to do so because of Petitioner's

**MEMORANDUM DECISION AND ORDER - 12**

"inability to realize what she is doing and how it is affecting things outside of her." (AR 18, 62, 63.) On the function report, Petitioner's mother noted that, although Petitioner could feed the fish, she "let water evaporate from bowl," and "watered silk houseplants" when asked to water the indoor plants. (AR 212.) Similarly, Petitioner reported she could feed herself, but the ALJ ignored Petitioner's father's testimony about her limitations in that regard. (AR 18.) Petitioner's father testified that, while Petitioner can cook pasta, she is not safe doing anything else involving cooking because "things tend to get left near burners." (AR 59.)

The ALJ found also that Petitioner's allegations that her nonverbal learning disability would preclude all work were not consistent with or supported by the objective medical findings. Here, the ALJ selectively considered Petitioner's strengths, which included her strong vocabulary and generally normal IQ. But, the error with the ALJ's approach in selecting Petitioner's strengths and considering them in isolation is the ALJ's failure to appreciate Petitioner's impaired cognitive functioning as a whole. Petitioner's non-verbal learning disability is complex. Thus, while Petitioner does have strengths, when her cognitive deficits are considered holistically, Petitioner lacks the ability to problem solve, is impulsive, and has "limited insight regarding the functional impact of her areas of difficulty." (AR 326.)

And finally, the ALJ noted that Petitioner's presentation at the hearing belied her assertion she was unable to process information or act appropriately around others. The ALJ noted Petitioner showed no difficulty understanding questions, answered questions

**REPORT AND RECOMMENDATION - 13**

clearly and concisely, and did not display any significant impairment in social functioning. But, the ALJ observed Petitioner via video conference for only one hour. (AR 30.) The fact Petitioner did not exhibit outward manifestations of her learning disability during a one hour video conference "provides little, if any, support for the ALJ's ultimate conclusion that Petitioner is not disabled or that her allegations of the difficulties she experiences as a result of her learning disability are not credible." *Gallant v.* Heckler, 753 F.2d 1450, 1455 (9th Cir. 1984).

Additionally, the ALJ's reliance on his own observations during a one hour video conference to discount the effect of Petitioner's mental impairments and their interference with her ability to perform work tasks in a competitive environment overlooks a considerable longitudinal history present in the record evidencing Petitioner's inability to interact appropriately with others. Although the medical opinions, (other than Dr. Ross's opinion), in the administrative record predate the disability onset date and are may not constitute substantial evidence, *Carmickle v. Comm'r Soc. Sec. Admin*, 533 F.3d 1155, 1165 (9th Cir. 2008) (concluding "[m]edical opinions that predate the alleged onset of disability are of limited relevance"), these same medical records are relevant because they document a long history of Petitioner's difficulties with social interaction and an inability to live independently. (AR 292, 300, 302, 304.)

For example, in the fifth grade, Petitioner was described as socially awkward, failing to smile or understand the clinician's attempts at humor. (AR 304.) In 1990, Petitioner was evaluated and observed over a period of time, and the assessment was that,

**MEMORANDUM DECISION AND ORDER - 14**

although Petitioner presented as "bright enough to figure out how you rent an apartment,… her understanding of social skills and social nuances is not adequate enough to allow her to do that." (AR 296.) 1996, Dr. Corgiat, Petitioner's treating psychologist at the time, recorded that Petitioner had very poor social perception, manifesting itself in an inability to accurately assess non-verbal social cues. (AR 300.) In other words, although Petitioner could grasp the steps involved in a process and follow directions, her inability to understand the larger context in which the steps occurred would prevent her from completing the task. Similarly, Petitioner was able to operate a car, but because her brain could not process the context around her, Petitioner was unable to drive. (AR 18, 58, 59.) Petitioner would see stop signs or posts, but fail to actually stop because she could not process the information and understand the effect of her actions. (AR 58, 59.)

Dr. Ross observed Petitioner over the course of three visits, and found that, while Petitioner had no difficulty understanding instructions and was able to complete the tests administered, the test results indicated Petitioner could not appropriately use verbally-based information in real life situations. (AR 279.) In other words, although Petitioner could answer questions and follow directions, just as she was able to answer the ALJ's questions, it is Petitioner's other veiled impairments which impede her ability to perform work functions in a competitive, sustained manner. Thus, there is relevant evidence in the record, which the ALJ ignored in favor of his off-the-cuff observation of Petitioner via a one hour video conference, demonstrating Petitioner's longstanding history of substantial difficulty with social interaction.

**REPORT AND RECOMMENDATION - 15**

Based upon the Court's review of the ALJ's credibility determination and the record as a whole, the Court recommends a finding that the ALJ did not explain with specific, legitimate reasons based upon substantial evidence in the record that Petitioner was not entirely credible.

**3.      Lay Witness Testimony**

Petitioner contends also that the ALJ did not provide valid reasons for giving little evidentiary weight to the testimony of her parents. She claims the ALJ improperly disregarded her mother's and her father's testimony.

Lay testimony as to a claimant's symptoms or how an impairment affects the claimant's ability to work is competent evidence that the ALJ must take into account. *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir.1996). Competent lay witness testimony "cannot be disregarded without comment," *Nguyen*, 100 F.3d at 1467, and in order to discount competent lay witness testimony, the ALJ "must give reasons that are germane to each witness," *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993). But, the ALJ is not required to discuss every witness's testimony on an individualized, witness-by-witness basis. *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012). Rather, if the ALJ gives germane reasons for rejecting testimony by one witness, the ALJ need only point to those reasons when rejecting similar testimony by a different witness. *Molina*, 674 F.3d at 1115 (citing *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009) (holding that because "the ALJ provided clear and convincing reasons for rejecting [the claimant's] own subjective complaints, and because [the lay witness's] testimony was similar to such

**MEMORANDUM DECISION AND ORDER - 16**

complaints, it follows that the ALJ also gave germane reasons for rejecting [the lay witness's] testimony")). "The applicable regulations are in accord; they require the ALJ to consider testimony from family and friends submitted on behalf of the claimant, *see* 20 C.F.R. §§ 404.1529(c)(3), 404.1545(a)(3), but do not require the ALJ to provide express reasons for rejecting testimony from each lay witness." *Id.*; *see also* SSR 06–03p (recognizing that "there is a distinction between what an adjudicator must consider and what the adjudicator must explain in the disability determination or decision").

Petitioner's father, Dr. Benson, testified about Petitioner's difficulty riding a bike and driving a car. Petitioner would "run into things with the bike," because she was unable to process the effect of things around her. (AR 58-59.) Dr. Benson testified that his daughter would not be able to get anywhere on her own, that she could not cook anything other than pasta, and that, while she was able to provide transcription services for his medical office, she could not type fast, and the "meaning was not there….she didn't get the sense of [the language] sometimes." (AR 58.) When asked whether he thought his daughter could perform any job, Dr. Benson answered, "I don't think so … That typing job was done, but they didn't think --- people didn't think that could be done in a competitive environment. We tried to get her jobs online and…but she couldn't type fast enough for them. And I think probably the sense and the meaning of things was often lost too." (AR 60.)

Petitioner's mother, Devona Benson, testified regarding Petitioner's difficulty watering the flowers, remarking that Petitioner did not realize she was making mistakes.

**REPORT AND RECOMMENDATION - 17**

(AR 62 – 63.) Mrs. Benson testified also that Petitioner lost her job in a bookstore because Petitioner filed the books incorrectly – "she just didn't agree with their category and she'd put it over in the westerns." (AR 63.) Mrs. Benson believes Petitioner would have to be monitored, and could not follow simple work instructions without monitoring. (AR 63.) Even with such an accommodation, Mrs. Benson testified it would take Petitioner longer to do a task. (AR 64.) Mrs. Benson did not believe Petitioner could manage the finances of a home independently, and would not be able to care for the maintenance of a home because she "wouldn't realize if something needed attention." (AR 66.)

Here, Respondent argues the ALJ was entitled to discount the lay testimony from Petitioner's parents, which Respondent contends largely mirrored and elaborated on Petitioner's own complaints, for the same reasons the ALJ rejected Petitioner's testimony. Brief at 4. (Dkt. 15.)  But, the credibility conclusion, on page 12 of the ALJ's written decision, references only the "claimant's statements concerning the intensity, persistence and limiting effects" of her symptoms. (AR 22.) Thus, although the written determination reflects that the ALJ reviewed the lay witness testimony in the record, the ALJ does not provide any specific reasons for discrediting Dr. and Mrs. Bensons' testimony.

Even if the Court assumes the ALJ's reasons for rejecting Petitioner's parents' testimony were for the same reasons the ALJ rejected Petitioner's credibility, the Court's conclusion, above, that the ALJ erred in his credibility determination naturally flows to

**MEMORANDUM DECISION AND ORDER - 18**

the ALJ's conclusion for rejecting the parents' testimony. If the reasoning for discounting Petitioner's credibility was flawed, so too, was the reasoning for rejecting the parents' testimony.

There is some indication that the ALJ rejected Mrs. Benson's testimony in part because there were apparent contradictions elsewhere in the record. For example, with regard to Petitioner losing her job at the bookstore, while Mrs. Benson reported it was because Petitioner did not file the books correctly, Petitioner reported to Dr. Ross that she "screwed off too much." (AR 19.) However, the objective testing administered by Dr. Ross indicated Petitioner has "limited insight regarding impact of her deficits." (AR 317.) Dr. Ross also reported that Petitioner was "unsuccessful in attempted volunteer work," and had not been able to secure a position in any other capacity after losing her transcription job from her father in 2009. (AR 278; 186-197.)

The ALJ noted also that Mrs. Benson testified Petitioner is unable to manage her finances, but on the function report, indicated her daughter   pays bills, counts change, handles a savings account, and uses a checkbook. (AR 19, 212.) The Court does not find Mrs. Benson's testimony inconsistent with other reports about Petitioner's functional limitations. The ALJ asked Mrs. Benson whether Petitioner would be able to manage "the finances of a home independently," which Mrs. Benson answered negatively. (AR 66.) The ability to manage the finances of a home independently is not the same as being able to pay a bill, count change, use a savings account, and use a checkbook with the type of supervision Mrs. Benson indicated she and her husband provide for Petitioner.

**REPORT AND RECOMMENDATION - 19**

With regard to the testimony of Petitioner's father, the ALJ apparently rejected Dr. Benson's conclusion that Petitioner is unable to perform competitive work based upon Dr. Benson's opinion testimony that Petitioner has been unable to secure another typing job similar to the transcription job Petitioner performed. (AR 19.) However, rejecting Dr. Benson's testimony on the grounds that his conclusion she could not work was based solely upon her inability to secure a typing job overlooks Dr. Benson's other testimony about his daughter's disabilities, and the substantial evidence in the record that Petitioner has not been able to maintain other employment. Dr. Benson testified about his daughter's other, substantial impairments, such as her inability to drive, her inability to understand the meaning of things, and her inability to process the environment around her. Further, the typing job Petitioner performed for her father was in a controlled environment, was performed at home, and Petitioner had substantial assistance from her father to complete the tasks assigned to her. And finally, the computer repair job lasted for one month before Petitioner was terminated from employment. There is nothing in the record, other than the ALJ's apparent disagreement, to contradict Dr. Benson's testimony that Petitioner would have extreme difficulty sustaining competitive employment.

Based upon the record as a whole, the Court recommends a finding that the ALJ did not give germane or legally sufficient reasons for finding Petitioner's parents not credible during their testimonies before the ALJ.

## 4.    Physician Opinions

The Court of Appeals for the Ninth Circuit distinguishes among the opinions of

three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians). *Lester v. Chatter*, 81 F.3d 821, 830 (9th Cir. 1995). Generally, more weight is accorded to the opinion of a treating source than to nontreating physicians. *Winans v. Bowen*, 853 F.2d 643, 647 (9th Cir.1987). If the treating physician's opinion is not contradicted by another doctor, it may be rejected only for "clear and convincing" reasons. *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir.1991). If the treating doctor's opinion is contradicted by another doctor, the Commissioner may not reject the treating physician's opinion without providing "specific and legitimate reasons" supported by substantial evidence in the record for so doing. *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir.1983). In turn, an examining physician's opinion is entitled to greater weight than the opinion of a nonexamining physician. *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir.1990); *Gallant v. Heckler*, 753 F.2d 1450 (9th Cir.1984).

An ALJ is not required to accept an opinion of a treating physician if it is conclusory and not supported by clinical findings. *Matney ex rel. Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992). Additionally, an ALJ is not bound to a physician's opinion of a petitioner's physical condition or the ultimate issue of disability. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). If the record as a whole does not support the physician's opinion, the ALJ may reject that opinion. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004). Items in the record that may not support the

physician's opinion include clinical findings from examinations, conflicting medical opinions, conflicting physician's treatment notes, and the claimant's daily activities. *Id.*; *Bayliss v. Barnhart*, 427 F.3d 1211 (9th Cir. 2005); *Connett v. Barnhart*, 340 F.3d 871 (9th Cir. 2003); *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595 (9th Cir. 1999). But, an ALJ may reject a treating physician's opinion if it is based "to a large extent" on a claimant's self -reports that have been property discounted as not credible. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008).

Here, Dr. Ross's opinion was controverted by the non-examining state agency medical consultant, Dr. Stephenson. Accordingly, the ALJ was required to provide specific, legitimate reasons for rejecting Dr. Ross's opinion. Specific, legitimate reasons for rejecting a physician's opinion may include inconsistency between the treating physician's opinion with other medical evidence in the record; its inconsistency with the physician's own treatment notes; the fact that it is based to a large extent on a claimant's properly discredited subjective complaints; its inconsistency with a claimant's daily activities; the fact that it is conclusory, brief, and unsupported by the record as a whole or by objective medical findings; its inconsistency with the claimant's testimony; the fact that the claimant's impairments can be effectively controlled with medication; and the claimant's failure to follow the physician's prescribed course of treatment. *Bartlett v. Colvin*, 20105 WL 2412457 (D. Or. 2015) (citing *Ghanim v. Colvin*, 763 F.3d 1154, 116162 (9th Cir. 2014); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004)).

**MEMORANDUM DECISION AND ORDER - 22**

Over the course of three visits from Petitioner in May and June of 2012, Dr.
Theresa Ross, a clinical psychologist, administered several psychological function tests to
Petitioner at the request of Dr. Elizabeth Gerard, M.D. In her report, Dr. Ross notes that,
throughout the testing sessions, Petitioner's affect and bearing "was odd…with flat affect
and odd gestures…loud, somewhat disinhibited responses, and generally odd
presentation." (AR 323.) Dr. Ross noted Petitioner had no difficulty understanding the
multistep instructions presented to her, and that Petitioner put forth "genuine effort."
However, the testing revealed a dramatic statistical difference between Petitioner's verbal
comprehension and perceptual reasoning, reflective of a severe nonverbal learning
disability. Petitioner's  working memory, while falling within the ninety-third percentile,
was highly contrasted with her processing speed, which fell at the eighth percentile. Dr.
Ross noted that these two indicators reflected Petitioner's  impaired ability to sustain
basic attention and complex attention to tasks. (AR 324.)

Other test results indicated that, while Petitioner can retain information and has a
wide vocabulary range, Petitioner cannot use verbally-based information in real life
situations. (AR 324.) In other words, according to the objective findings, Petitioner has a
strong knowledge base, but showed relative weakness in the use of language and
abstraction. (AR 324.) Testing results further revealed Petitioner suffered deficits in
visuomotor integration, executive function, sequential reasoning, and judgment.
According to Dr. Ross, Petitioner's pattern of functional deficits would preclude her from
"succeeding in essentially any competitive employment situation." (AR 326.) Dr. Ross

**REPORT AND RECOMMENDATION - 23**

recommended that Petitioner's parents continue to provide appropriate support and supervision to maintain Petitioner's safety. (AR 326.)[1]

The state agency's psychological consultant, Dr. Mack Stephenson, Ph.D., reviewed the record on November 6, 2012, and rendered findings contradictory to those of Dr. Ross. According to Dr. Stephenson, Petitioner has only moderate limitations with detailed instructions and maintaining concentration and attention for extended periods, and moderate limitations working in coordination with others. Dr. Stephenson is of the opinion that Petitioner has "many other strengths in other areas that should not be overlooked, and would attribute her function to sustain some type of employment." (AR 84.) These strengths were identified as success in verbal subtests, fund of information, vocabulary, and strong verbal knowledge. In other words, Dr. Stephenson focused solely upon Petitioner's strengths, such as her good memory and spelling skills, which translated into the ability to "finish short/simple verbal [and] written instructions." (AR 86.) Accordingly, despite Petitioner's moderate limitations with regard to social functioning and concentration, persistence, and pace, as well as moderate limitations associated with more detailed instructions, Dr. Stephenson opined Petitioner can maintain

---

[1] Petitioner contends the ALJ erred in failing to consider the opinions of Dr. Corgiat, who treated Petitioner in 1996. According to Dr. Corgiat, Petitioner's nonverbal learning disability resulted in "marked" limitations with respect to her ability to interact appropriately and communicate effectively with others, and deficits in attention and concentration impairing her ability to timely complete tasks in a work setting. (AR 319.) Medical opinions of a physician which predate the alleged onset of disability are not considered substantial evidence. *Carmickle v. Comm'r Soc. Sec. Admin*, 533 F.3d 1155, 1165 (9th Cir. 2008) (concluding "[m]edical opinions that predate the alleged onset of disability are of limited relevance") (citation omitted); *Burkhart v. Bowen*, 856 F.2d 1335, 1340 n. 1 (9th Cir. 1988) (concluding ALJ correctly rejected medical evidence because it predated the relevant time period). Nonetheless, the historical treatment records, which begin when Petitioner was five years of age and which document Petitioner's learning disability, are consistent with Dr. Ross's findings in 2012.

**MEMORANDUM DECISION AND ORDER - 24**

"some type of employment" based upon her other strengths.

The ALJ assigned more weight to Dr. Stephenson's opinion than to Dr. Ross's opinion on the grounds that Dr. Stephenson reviewed the entirety of the record; the totality of the evidence showed Petitioner had significant strengths that would not preclude all work provided Petitioner was limited to simple work with only occasional interaction with others; Dr. Ross was not a vocational expert, and therefor was not qualified to render an opinion with regard to all work or all work settings; and lastly, because the ALJ observed Petitioner and detected no significant impairment in social functioning during the hearing. (AR 21-22.)

Here, the reasons the ALJ stated for rejecting the opinion of Dr. Ross are not specific and legitimate nor supported by substantial evidence. Dr. Ross, who examined Petitioner and administered a battery of objective tests, was of the opinion that Petitioner's condition would preclude competitive employment. Dr. Ross viewed the objective testing criteria as a whole, and did not select individual strengths, such as Petitioner's strong vocabulary, as Dr. Stephenson did. In other words, an individual strength, such as vocabulary or the ability to follow simple instructions (such as the instructions Dr. Ross gave Petitioner for completing the tests) likely contributes to an instinct or impression that Petitioner has the ability to sustain employment; however, the evidence, when considered in context, provides an entirely different insight into Petitioner's significant limitations. In contrast to Dr. Stephenson, Dr. Ross viewed the test results in context, and as a whole.

**REPORT AND RECOMMENDATION - 25**

The ALJ rejected Dr. Ross's opinion in favor of insubstantial evidence– the report of a non-treating, non-examining physician, who selectively considered Petitioner's strengths without viewing them in context, combined with the ALJ's own observance of Petitioner's demeanor during a  one hour hearing conducted by video conference. *See Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995) ("the report of [a] non-treating, non-examining physician, combined with the ALJ's own observance of [the] claimant's demeanor at the hearing" did not constitute "substantial evidence").

Additionally, the medical evidence of record, while it may have predated the claimed disability onset date, is consistent with Dr. Ross's objective testing results and conclusions. Thus, the entirety of the record strongly suggests a reasonable and substantially supportable conclusion much different than the conclusion reached by the ALJ As discussed above, the various other treating and examining physicians who had treated or examined Petitioner since the age of five came to similar conclusions as did Dr. Ross, who administered several objective tests to measure the nature and extent of Petitioner's learning disability.

Examples in the medical history support the Court's conclusion that the selective focus by the ALJ on Petitioner's strengths constitutes error. One example, discussed above, was Petitioner's ability to rent an apartment. Although Petitioner could follow the steps to do so, she would be unable to actually complete the task because of her lack of social skills. (AR 296.) Dr. Goodwin, who examined Petitioner at the age of seventeen, concluded  Petitioner's deficits "limit crucial skills required to accurately perceive, attend

to, and integrate environmental information. These difficulties impact her ability to develop appropriate plans of action as well as initiating, monitoring, terminating and revising the plans in an appropriate and spontaneous manner." (AR 285.) In other words, the evidence in the record indicates the fallacy in selectively focusing on Petitioner's strengths without considering the collective impact of the deficiencies and veiled impairments upon these strengths. Thus, the totality of the evidence, as reflected in Petitioner's medical history, is consistent with Dr. Ross's opinion.

## CONCLUSION

Based upon the record as a whole, the Court recommends that Petitioner's petition for review be granted and this action remanded to the Commissioner for further proceedings. Based upon the lay witness testimony and the medical evidence of record, Petitioner's nonverbal learning disability is complex, and her cognitive abilities are not susceptible to singling out specific strengths without considering the impact of her deficits upon those strengths. In this regard, the Court concludes the ALJ erred in selectively considering certain evidence and failing to consider Petitioner's abilities holistically.

## <u>RECOMMENDATION</u>

**NOW THEREFORE IT IS HEREBY RECOMMENDED:**

1)      That the Petition for Review (Dkt. 1) be **GRANTED**.

2)      That this action be **REMANDED** to the Commissioner for further proceedings consistent with this opinion.

3)      That this Remand be considered a "sentence four remand," consistent with 42 U.S.C. § 405(g) and *Akopyan v. Barnhart*, 296 F.3d 852, 854 (9th Cir. 2002).

4)      That the District Judge enter Judgment against the Commissioner.

Written objections to this Report and Recommendation must be filed by Tuesday, August 30, 2016, and by Monday, September 12, 2016. 28 U.S.C. § 636(b)(1); Dist. Idaho L. Rule 72.1(b). If a party fails to object, that party may waive the right to raise factual and/or legal objections to the United States Court of Appeals for the Ninth Circuit.

DATED: August 18, 2016

Honorable Candy W. Dale
United States Magistrate Judge

**REPORT AND RECOMMENDATION - 29**